IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

DIANE STEWARD                                                                    PLAINTIFF

V.                              NO. 3:06CV00151-BD

MICHAEL J. ASTRUE,
Commissioner of Social Security[1]                                              DEFENDANT

## ORDER

I.      Procedural History

Plaintiff Diane Steward filed an application for Disability Insurance Benefits

("DIB") under Title II of the Social Security Act (the "Act") on March 9, 2002, and an

application for Supplemental Security Income ("SSI") under Title XVI of the Act on

October 18, 2002.  Ms. Steward alleged disability due to (Tr. 256) severe angina, hip

pain, back pain, and depression.  (Tr. 255, 400, 409, 419)  The Administrative Law Judge

("ALJ")[2] held a hearing on October 30, 2003, and the Plaintiff appeared with her attorney.

(Tr. 396)  The record was reopened on March 17, 2004, for the purpose of receiving

additional exhibits.  (Tr. 431)  The ALJ issued a decision on April 6, 2004, denying

Plaintiff benefits.  (Tr. 22-27)  On July 7, 2006, the Appeals Council denied her request

---

[1]Michael J. Astrue was sworn in as the Commissioner of Social Security on
February 12, 2007.  He is therefore substituted for Jo Anne B. Barnhart pursuant to
Fed.R.Civ.P. 25(d)(1).

[2] The Honorable Lesly Mattingly, Administrative Law Judge

1

for review.  (Tr. 8-11)  Plaintiff filed the current Complaint (# 2) on August 29, 2006.

For the reasons that follow, the decision of the ALJ is affirmed.

## II.    Background

Ms. Steward was 46 years old at the time of her disability hearing.  (Tr. 397) She

had a tenth grade education and worked at Kroger for twenty years.  (Tr. 397-98)  At the

hearing, she testified that during her twenty years at Kroger, she "did office work," "was

in receiving," "stocked," and "did a little bit of everything."  (Tr. 398)  Ms. Steward has

not worked since 1997. (Tr. 399)

Ms. Steward had a four-wheeler accident in 1996 and broke her hip.  (Tr. 399) She

had two surgeries following the accident to repair damage to her hip.  (Tr. 399) In

November, 1997, Ms. Steward had a heart attack and three months later had another mild

heart attack.  (Tr. 400)  At the hearing, she complained of hip pain, back pain, angina, and

depression.  (Tr. 400, 409, 417)

## III.    Findings of the ALJ

The ALJ appropriately followed the five-step sequential analysis set out in the

social security regulations, C.F.R. §§ 404.1520(a)-(f) (2005), finding: (1) the Plaintiff met

the disability insured status requirements of the Act on October 29, 1999 and continued to

meet them through December 31, 2002; (2) the Plaintiff had not engaged in substantial

gainful activity since the onset date; (3) the medical evidence established the claimant had

post-status hip injury, osteoarthritis of the hip, pain disorder, histrionic personality

2

disorder, and had suffered myocardial infarction, but she did not have an impairment or a combination of impairments, that rose to the level of any impairment listed in Appendix 1 to Subpart P, Regulations No. 4 and 16; (4) the Plaintiff was unable to perform her past relevant work; and (5) claimant had transferable work skills that could be applied to meet the requirements of other work which existed in significant numbers in the national economy.  (Tr. 25-26)

Plaintiff contends the findings of the ALJ are not supported by substantial evidence because: (1) the ALJ did not properly specify the skills from Plaintiff's past work that were transferable; (2) the ALJ erred in his assessment of Plaintiff's credibility under *Polaski v. Heckler*, 751 F.2d 943 (8th Cir. 1984) because he did not analyze Plaintiff's work history; and (3) the ALJ erred in disregarding the opinion of Plaintiff's treating physician.

The Commissioner argues: (1) the ALJ properly used a vocational expert ("VE") to specify Plaintiff's transferable skills; (2) the ALJ properly assessed Plaintiff's credibility; and (3) the ALJ properly rejected the opinion testimony of Plaintiff's treating physician and a consulting psychologist.

## IV.   Legal Analysis

In reviewing the decision of the ALJ, this Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. 42 U.S.C. § 405(g).  This review function is limited, and the decision of the ALJ must be

affirmed "if the record contains substantial evidence to support it." *Edwards v. Barnhart,*
314 F.3d 964, 966 (8th Cir. 2003). "Substantial evidence is less than a preponderance but
enough so that a reasonable mind could find it adequate to support the decision." *Id.*
Evidence that both supports and detracts from the ALJ's decision must be considered, but
the decision cannot be reversed "merely because there exists substantial evidence
supporting a different outcome." *Id.* "Rather, if, after reviewing the record, . . . it is
possible to draw two inconsistent positions from the evidence and one of those positions
represents the [ALJ's] findings, we must affirm the decision of the [ALJ]." *Young v.
Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000) (citations and quotations omitted).
Thus, the Court's function on review is to determine whether the Commissioner's
decision is supported by substantial evidence on the record as a whole and whether it is
based on legal error. *Long v. Chater,* 108 F.3d 185, 187 (8th Cir. 1997); see also, 42
U.S.C. § 405(g).

A.      *Transferrable Skills*

        Plaintiff contends the ALJ did not properly specify the skills from her past
employment at Kroger that would be transferable. Specifically, Plaintiff argues the ALJ
did not comply with the requirements set forth in Social Security Ruling 82-41 ("the
Ruling") which provides:

>       When a finding is made that a claimant has transferable skills, the acquired
>       work skills must be identified, and specific occupations to which the
>       acquired work skills are transferable must be cited in the State agency's
>       determination or ALJ's decision.

4

Soc. Sec. Ruling 82-41, 1982 WL 31389 at *7 (August 20, 1980).

Plaintiff's argument fails because in this case the transferable skills and specific occupations to which they transferred were identified by a VE who testified at the hearing. (Tr. 425)  At the hearing, the ALJ asked the VE whether Plaintiff had any transferable skills from her work at Kroger and the VE testified as follows:

> the cashiering – the cashier component of this job, the cash drawers and so forth and the reports and so on, that corresponds to basically a cashier I title. In this state, there are approximately 4,500 of these types of jobs at the sedentary level.  Nationally, we've got over 450,000.  We've got the shipping and receiving clerking clerical aspect of this job.  In this state at the sedentary level, we've got around 1,700 of those jobs.  Nationally, the figure is 188,000. . . . And then, you know, there would be possibly some bookkeeping on the other end of the clerical scale.  At the sedentary level, we've got around 13,000 in this state, 1.5 million nationally, all skilled and all sedentary.  (Tr. 425)

The Social Security Regulations ("the Regulations") specifically approve of use of vocational expert testimony to determine whether skills are transferable.  20 C.F.R. § 404.1566(e) provides:

> If the issue in determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue, we may use the services of a vocational expert or other specialist. We will decide whether to use a vocational expert or other specialist.

20 C.F.R. § 404.1566(e); See also 20 C.F.R. § 416.966(e) (2007).  Under the Regulations, the ALJ appropriately relied on the VE's testimony to determine the existence of

transferable skills.  See *Fines v. Apfel*, 149 F.3d 893, 895 (8th Cir. 1998); *Davis v. Shalala*, 31 F.3d 753, 756 (8th Cir. 1994).

Plaintiff's reading of Ruling 82-41 is too narrow.  While the Ruling does require the ALJ to specify the claimant's transferrable skills, the Ruling goes on to suggest that an ALJ should use vocational expert testimony to assist in determining transferable skills.  The Ruling provides, "[a] VS is sometimes required to assist the adjudicator or ALJ in determining the skill level of past work," and an ALJ may rely on "VS statements based on expert personal knowledge or substantiation by information contained in the publications listed in regulations sections 404.1566(d) and 416.966(d)."  Soc. Sec. Ruling 82-41, 1982 WL 31389 at *4, *7 (August 20, 1980).  In this case, the VE's testimony that Plaintiff had skills from her past work at Kroger that would transfer to a cashier I position, a shipping and receiving clerk position, and a bookkeeper position, even if based on personal experience, met the requirements of the Regulations and the Ruling.

**B.**     ***Subjective Complaints of Pain***

Plaintiff contends the ALJ did not afford sufficient weight to her subjective complaints of pain because he failed to discuss specifically her work history as part of his analysis.  This argument fails for two reasons.  First, the ALJ heard and acknowledged testimony at the hearing about Plaintiff's work history and noted it in his opinion.  (Tr. 17, 24)  While the ALJ failed to cite to Plaintiff's work history in his analysis of the Plaintiff's subjective complaints, that does not mean he did not considered it when

determining the weight to give Plaintiff's complaints.  See *Montgomery v. Chater*, 69 F.3d 273, 275 (8th Cir. 1995) (failure to mention an insurance disability decision in his opinion did not mean the ALJ did not consider it when determining the claimant's residual functional capacity).

Second, the Eighth Circuit has held the failure to discuss each *Polaski* factor in an opinion is not a sufficient reason to set aside an ALJ's finding if the deficiency has no practical effect on the outcome.  *Brown v. Chater*, 87 F.3d 963 (8th Cir. 1996) citing *Benskin v. Bowen*, 830 F.2d 878, 883 (8th Cir.1987).  An ALJ's conclusions may be upheld if the record as a whole supports it.  *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001).

In this case, the ALJ acknowledged the *Polaski* standard and gave careful consideration to the relevant factors.  (Tr. 18)  The ALJ's credibility determination is supported by the record as a whole and is entitled to deference.  *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).

**C.**     ***Opinions of Treating and Examining Physicians***

**1.**     **Dr. Banaji**

Plaintiff claims the ALJ should not have disregarded a letter submitted by her treating, primary care physician, Dr. Sudesh Banaji.  In the October 8, 2003 letter ("the Letter"), Dr. Banaji opined that Ms. Steward "continues to have significant limitations of

7

activity due to hip and back pain," and that she "has been burdened with extreme family stress and is barely coping with it."  (Tr. 355)

The opinions of treating sources are given controlling weight if the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is consistent with other substantial evidence in the case record.  20 C.F.R. §§ 404.1527(d) and 416.927(d).  Under the Regulations, when the opinion of a treating medical provider is given less than controlling weight, it is proper for the ALJ to consider: (1) the length of the treatment relationship; (2) the nature and extent of the treatment relationship; (3) the extent of relevant evidence supporting and explaining the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the treating source is a specialist; and (6) other factors which support or contradict the opinion.  20 C.F.R. §§ 404.1527(d) and 416.927(d).

Considering these factors, the ALJ appropriately concluded Dr. Banaji's opinion did not deserve controlling weight.  Although Dr. Banaji had been Plaintiff's treating physician for three years when he wrote the Letter, he did not cite any specific findings in his letter to justify his conclusions.  (Tr. 355)   See *Krogmeir v. Barnhart*, 294 F.3d 1019, 1023 (8th Cir. 2002) (treating physician's opinion is not entitled to substantial weight unless well-supported by medically acceptable clinical and laboratory diagnostic techniques, and consistent with other substantial evidence).  As the ALJ points out, Dr. Banaji's opinion is even inconsistent with his own treatment records.  In his opinion, the

ALJ noted that Dr. Banaji reported:  (1) Plaintiff walked several miles a day; (2) although she experienced pain on external rotation, she had normal hip and knee movements; (3) straight leg raising was normal; and (4) Plaintiff only experienced "mild" hip pain "on and off."  (Tr. 310, 312, 356).

Plaintiff contends the ALJ "relied exclusively on Dr. [James T.] Gaylon's post-hearing evaluation in determining Ms. Steward's subjective complaints of pain were not consistent with the record medical evidence." (#12 at p. 14)  However, this contention ignores the ALJ's discussion of treatment records from Dr. A. Sherman (Tr. 306),  Dr. Banaji (Tr. 356-68), and the MRI reports of Steve Harms, M.D. finding only "mild" bulging annulus L4-5 with "mild" bilateral neuroforaminal narrowing.  (Tr. 353-54)  All of this evidence was considered by the ALJ in addition to Dr. Gaylon's evaluation.  (Tr. 20-21)

The ALJ appropriately acknowledged Dr. Banaji's opinions were inconsistent with the opinions of Dr. Galyon, an orthopedic specialist.  (Tr. 369-70)  Under 20 C.F.R. §§ 404.1527(d)(5) and 416.927(d)(5) it is appropriate to give more weight to the opinion of a specialist about medical issues related to the area of specialty than to the opinion of a source who is not a specialist).  See also *Hinchey v. Shalala*, 29 F.3d 428 (8th Cir. 1994). Having reviewed the relevant factors, the Court concludes it was not error for the ALJ to reject Dr. Banaji's opinion in favor of Dr. Gaylon's opinion.

2.     **Richard C. Maddock, Ph.D.**

Finally, Plaintiff contends the ALJ erred in ignoring the opinion of Dr. Maddock, a clinical psychologist who evaluated the Plaintiff after the hearing.  Specifically, Ms. Steward contends the ALJ should not have rejected Dr. Maddock's opinion that she had a poor ability to handle work-related stress.

It is the ALJ's function to resolve conflicts among various treating and examining physicians.  *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).  "The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole."  *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001).

In this case, the ALJ did not ignore Dr. Maddock's opinion.  He acknowledged Dr. Maddock's report and discussed it in detail.  (Tr. 21)  Then, the ALJ appropriately went on to weigh Dr. Maddock's opinion against the record as a whole.  He once again considered the records from Dr. Banaji relating to Plaintiff's mental health (Tr. 22), her lack of a family history of depressive disorder, and her lack of regular treatment from a psychologist, psychiatrist, or a counselor.  Based on the record as a whole, the ALJ properly found Dr. Maddock's opinion to be inconsistent.  (Tr. 21-22)

V.     **Conclusion**

The record in this case supports the ALJ's finding that Ms. Steward is not disabled within the meaning of the Act.  There is sufficient evidence in the record, both medical

and testimonial, to support the ALJ's assessment that Plaintiff retains the capacity to

perform other work existing in significant numbers in the national economy.

Accordingly, Plaintiff's appeal is DENIED.  The Clerk is directed to close the case.

DATED this 31st day of May, 2007.


_____
UNITED STATES MAGISTRATE JUDGE